UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| U. S. COMMODITY FUTURES TRADING COMMISSION,<br><br>    Plaintiff,<br><br>    vs.<br><br>PEREGRINE FINANCIAL GROUP, INC., AND RUSSELL R. WASENDORF SR.,<br><br>    Defendants. | Civil Action No: 1:12-cv-05383<br><br>Judge George W. Lindberg<br><br>Magistrate Judge Young B. Kim |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR A STATUTORY RESTRAINING ORDER WITH NOTICE AND OTHER ANCILLARY RELIEF**

## I. SUMMARY

From at least February 2010 through the present ("relevant time"), Peregrine Financial Group Inc. ("PFG"), a registered futures Commission Merchant ("FCM"), and Russell R. Wasendorf, Sr. ("Wasendorf"), PFG's chief executive officer ("CEO") and owner, have failed to maintain adequate customer funds in segregated accounts. The PFG customer accounts are short funds in an amount which exceeds and has exceeded $200 million. PFG and Wasendorf have used customer funds for purposes other than those intended by PFG's customers, and consequently, have misappropriated these funds. The whereabouts of the funds is currently unknown.

Additionally, during the post Dodd-Frank period between September 2011 and the present, PFG and Wasendorf have filed false reports with the CFTC regarding the amount of customer funds maintained in segregated accounts by PFG.

By virtue of this conduct and the conduct further described herein, PFG and Wasendorf have engaged, are engaging or are about to engage in conduct in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq*. (2006 and Supp. 2009), as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010) ("Dodd-Frank Act"), §§ 701-774 (enacted July 16, 2010), to be codified at 7 U.S.C. §§ 1 *et seq*., and Commission Regulations, 17 C.F.R. §§ 1 *et seq*., (2011).[1]

---

[1] In further support of its Motions for Injunctive and Other Equitable Relief, the Commission submits with this Memorandum, its Appendix of Declaration and Exhibits in Support of Plaintiff's Motion, which includes the declaration of Futures Trading Investigator Melissa Glasbrenner and supporting exhibits. Citations are to the Appendix, source document, and page, i.e "App., Glasbrenner Dec., p. #, ¶ #."

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. §13a-1, which authorizes the CFTC to seek injunctive relief against any person whenever it shall appear to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any rule, regulation, or order thereunder.

Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), since Defendants are found in, inhabit, or transact business in this District.

## III. THE PARTIES

Plaintiff **Commodity Futures Trading Commission** ("Commission" or "CFTC") is an independent federal regulatory agency that is charged by Congress with administering and enforcing the provisions of the Act (2006 and Supp. 2009), as amended by the Dodd-Frank Act, to be codified at 7 U.S.C. §§ 1 *et seq*., and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2012).

Defendant **Peregrine Financial Group Inc.** ("PFG") is registered with the Commission as a futures commission merchant ("FCM") and notice-registered broker-dealer. *See* App., Glasbrenner Dec., p. 4, ¶ 6, Ex. 9, pgs. 103-4. It was first registered as an FCM in 1992. *Id.* PFG's business address is 311 W. Monroe St., Suite 1300, Chicago, Illinois 60606. *See* App., Glasbrenner Dec., p. 4, ¶ 6.

Defendant **Russell R. Wasendorf Sr**. is CEO, Principal, and owner of PFG. *See* App., Glasbrenner Dec., p. 4, ¶ 5, Ex. 8, pgs. 100-102. He is registered as an associated person and a listed principal of PFG since June 15, 1992. *Id.* Wasendorf is the only person who owns more than 10 percent of PFG. *Id.* Wasendorf resides in Cedar Rapids, Iowa. *See* App., Glasbrenner Dec., p. 4, ¶ 5.

2

## IV. FACTS

A. **PFG and Wasendorf Exercised Control Over Customer Funds held in PFG's Segregated Fund Account**

During the relevant period, PFG operated as an FCM which was engaged in soliciting and accepting orders for the purchase or sale of commodities for future delivery. *See* App., Glasbrenner Dec., p. 4-5, ¶ 6, 10. As part of its operations as an FCM, PFG maintained a bank account at a U.S. Bank branch in Cedar Falls, Iowa, designated account XXXX1845 "Peregrine Financial Group, Inc., Customer Segregated Account," (the "1845 customer seg account"). *See* App., Glasbrenner Dec., p. 5, ¶ 10. PFG identified the monies held in this account as constituting funds belonging or accruing to PFG's futures or options customers, deposited with PFG for the purpose of trading futures or options. *Id.*

At all relevant times, Wasendorf execised control over PFG as its owner and Chief Executive Officer. *See* App., Glasbrenner Dec., p. 4, ¶ 5, Ex. 8, pgs. 103-4. Wasendorf also acted as PFG's agent in exercising control over the 1845 customer seg account, as one of three signatories on the account. *See* App., Glasbrenner Dec, p. 5, ¶ 7.

On or about July 9, 2012, Wasendorf attempted to commit suicide at PFG offices in Cedar Falls, Iowa, and left behind a note discussing falsification of bank documents *See* App., Glasbrenner Dec, p. 5, ¶ 8.

B. **PFG and Wasendorf Have Failed to Maintain Customer Funds in Segregated Accounts and Have Misappropriated at Least $200 Million of Customer Funds**

Since at least February 2010, PFG and Wasendorf have failed to maintain adequate customer funds in the 1845 customer seg account and have misappropriated those customer funds for purposes other than those intended by their customers.

3

On or about February 28, 2010, PFG records showed a balance of approximately $207 million in the 1845 customer seg account. *See* App., Glasbrenner Dec., p. 6., ¶ 11, Ex. 6, pgs. 94-6. PFG had collected at least that amount from customers. However, the actual balance in the account at that time was less than $10 million. *See* App., Glasbrenner Dec., p. 6., ¶ 13.

On or about March 30, 2011, PFG records showed a balance of approximately $218 million in the 1845 customer seg account. *See* App., Glasbrenner Dec., p. 6., ¶ 12, Ex. 5, pgs. 91-3. PFG had received at least that amount from customers. However, the actual balance in the account was less than $10 million. *See* App., Glasbrenner Dec., p. 6., ¶ 13, Ex. 7, pgs. 97-9.

On or about July 9, 2012, PFG records showed a balance of approximately $225 million in the 1845 customer seg account. *See* App., Glasbrenner Dec., p. 7 ¶ 14, Ex. 10, pgs. 105-11PFG had received at least that amount from customers. However, the actual balance in the account was approximately $5 million. *Id.*

The location of over $200 million in PFG customer funds is presently unknown.

PFG and Wasendorf have misappropriated over $200 million in customer funds by failing to deposit and maintain these funds in the 1845 customer seg account for the purpose of trading futures or options, as the customers intended.

**C.     PFG and Wasendorf Have Made False Statements in Documents Filed with the Commission**

In its capacity as a registered FCM, PFG was required to file monthly 1-FR statements with the Commission. One section of the form 1-FR statements required PFG to report "funds in segregation for customers trading on U.S. Commodity Exchanges." *See* App., Exs. 1, 2, 3.

Since August of 2011, Wasendorf, while acting on behalf of PFG, has filed at least three false CFTC Form 1-FR-FCM reports with the Commission. *See* App., Glasbrenner Dec., p. 6-7, ¶ 15-16, Exs. 1, 2, 3. During the relevant period, Wasendorf personally submitted three CFTC

4

Form 1-FR-FCM reports with the Commission for the months ending September 2011, December 2011, and May 2012. *See* App., Glasbrenner Dec., p. 7, ¶ 16, Exs. 1, 2, 3. Each of these reports falsely stated that PFG held over $200 million in customer funds in the 1845 account, while in reality the referenced account held no more than $10 million. *See* App., Glasbrenner Dec., p. 7, ¶ 16.

## V. ARGUMENT

### A. PFG and Wasendorf Violated Section 4d(a) of the Act and Regulation 1.20(a) by Failing to Segregate Customer Funds

Section 4d(a) of the Act, as amended, 7 U.S.C. § 6d(a), states that customer funds "shall be separately accounted for and shall not be commingled" with an FCM's funds. It further provides that an FCM may, for convenience, deposit customer funds into an account(s) with any bank, trust company or clearing house organization as "in the normal course of business shall be necessary to margin, guarantee, secure, transfer, adjust or settle" the contracts or trades of its customers "in accordance with such terms and conditions as the Commission may prescribe by rule, regulation, or order." The Regulations require that customer funds "shall be deposited under an account name which clearly identifies them as [belonging to commodity or option customers] and shows that they are segregated as required by the Act." Regulation 1.20, 17 C.F.R. § 1.20 (2012). Regulation 1.26(a), 17 C.F.R. § 1.26(a) (2012), further provides that FCMs who invest customer funds in money market funds must deposit those funds "under an account name which clearly shows that they belong to commodity or option customers and are segregated as required by the Act and this part."

From at least February 2010 through the present, PFG and Wasendorf failed to segregate customer funds by depositing and holding such funds in the 1845 customer seg account, and instead used customer funds for purposes other than those intended by its customers. By this

5

conduct, PFG and Wasendorf violated Section 4d(a) of the Act, as amended, 7 U.S.C. § 6d(a)(2), and Regulations 1.20(a), 17 C.F.R. §§ 1.20(a) (2012).

> **B.** **PFG and Wasendorf Violated Section 4b(a)(1)(A),(C) of the Act, as amended, by Fraudulently Misappropriating Customer Funds**

PFG and Wasendorf defrauded customers of PFG by misspropriating funds that should have been maintained in the 1845 customer seg account. Here, PFG and Wasendorf clearly misappropriated funds by failing to maintain the customer funds in the 845 account, resulting in a shortfall of over $200 million, and using the monies for purposes other than what the customers intended. *See Katz v. SEC*, 647 F.3d 1156, 1160 (DC Cir. 2011) (unauthorized transfers from customer account constitute misappropriation).

Misappropriation of pool participant funds constitutes "willful and blatant" fraud in violation of Section 4b(a) of the Act. *Weinberg*, 287 F. Supp. 2d at 1106; *see also CFTC v. Cook*, No. 09 SC 332MJD/JJK, 2009 WL 4823369, at *6 (D. Minn. Dec. 8, 2009) (defendants' misappropriated funds solicited from retail forex customers); *CFTC v. Noble Wealth Data Info. Serv. Inc.*, 90 F. Supp. 2d 676, 687 (D. Md. 2000) (defendants violated Section 4b(a) by diverting investor funds for operating expenses and personal use); *CFTC v. Skorupskas*, 605 F. Supp. 923, 932 (E.D. Mich. 1985) (defendant violated Section 4b when she misappropriated pool participant funds by soliciting funds for trading and then trading only a small percentage of those funds, while disbursing the rest to investors, herself, and her family); *In re Jerry W. Slusser*, [1998-1999 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶27,701 at 48,315 (CFTC July 19, 1999) (respondents violated Section 4b of the Act by surreptitiously retaining money in their own bank accounts that should have been traded on behalf of the investors), *aff'd in part, rev'd in part, Slusser v. CFTC*, 210 F.3d 783 (7th Cir. 2000).

6

### C. PFG and Wasendorf Violated Section 6(c)(2) of the Act, as amended, by Making False Statements of Material Facts to the Commission in CFTC Form 1-FR-FCMs

Section 6(c)(2) of the Act, to be codified at 7 U.S.C. § 9(2), prohibits making "any false or misleading statement of a material fact to the Commission, including in any registration application or any report filed with the Commission under this Act, or any other information relating to a swap, or a contract of sale of a commodity, in interstate commerce, or for future delivery on or subject to the rules of any registered entity, or to omit to state in any such statement any material fact that is necessary to make any statement of a material fact made not misleading in any material respect, if the person knew, or reasonably should have known, the statement to be false or misleading."

On its face, Section 6(c) requires the Commission to prove: (1) a false or misleading statement or omission was made; (2) in a filed report; (3) with scienter; and (4) that the false or misleading statement or omission was material.

Under Regulation 1.10(b), 17 C.F.R. § 1.10(b) (2012), with limited exception, FCMs such as PFG must file monthly financial reports with the Commission through CFTC Form 1-FR-FCM, commonly known as a "1-FR" or "financial report." Pursuant to Regulation 1.32, 17 C.F.R. § 1.32 (2012), FCMs must also monitor and compute their segregation requirements and customer funds on deposit in segregated accounts on a daily basis and maintain copies of these reports, commonly known as a "daily segregation computation."

Wasendorf, while acting on behalf of PFG, submitted CFTC Form 1-FR-FMC reports to the Commission which grossly misstated, by at least $200 million, the amount of customer funds held in PFG's 1845 customer seg account.

The information required to be filed with the Commission in the CFTC Form 1-FR-FMC reports, i.e. the amount of customer funds held in segregated accounts, is material in nature. *See*

7

*United States v. Gaudin,* 515 U.S.506, 509 (1995) (defining "materiality" for purposes of 18 U.S.C. § 1001; the false statement or omission must have "the natural tendency to influence or is capable of influencing the federal agency").

By submitting and signing false CFTC Form 1-FR-FMC reports to the Commission, Wasendorf violated Section 6(c)(2) of the Act.

### D. Wasendorf is Liable for PFG's Violations of the Act

Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006) provides that:

Any person who, directly or indirectly controls any person who has violated any provision of this Act or any of the rules, regulations, or orders issued pursuant to this Act may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person. In such action, the Commission has the burden of proving that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.

To establish controlling person liability under Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006), the Commission must show: (1) control; and (2) lack of good faith or knowing inducement of the acts constituting the violation. *In re First Nat'l Trading Corp.,* [1992-1994 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 26,142 at 41,787 (July 20, 1994), *aff'd without opinion sub nom. Pick v. CFTC,* 99 F.3d 1139 (6th Cir. 1996).

To establish control, the Commission must possess general control over the operation of the entity principally liable. *See, e.g., CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1334 (11th Cir. 2002), *cert. denied*, 543 US 1034 (2004) (recognizing an individual who "exercised the ultimate choice-making power within the firm regarding its business decisions" as a controlling person). Evidence that a defendant is an officer, founder, principal or the authorized signatory on the company's bank accounts indicates the power to control a company. *In re Spiegel,* [1987-1990 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 24,103, 1988 CFTC LEXIS 10 at *24

(CFTC Jan. 12, 1988); *see also Apache Trading Corp.*, [1990-1992 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 25,251, 1992 CFTC LEXIS 109, at *4 (CFTC Mar. 11, 1992) (finding that an individual who "performed almost all important managerial or supervisorial functions and made all important hiring decisions" was a controlling person).

Here, Wasendorf controlled PFG, and knowingly induced, directly or indirectly, all the conduct which constituted violations of the Act. Wasendorf was CEO and Principal of PFG. He controlled and was a signatory on the customer account where the missing funds should have been maintained.

Turning to the second element under Section 13(b) of the Act, the evidence shows that Wasendorf failed to act in good faith or that he knowingly induced the acts constituting the violations. To establish "that a controlling person knowingly induced conduct which violates the Act, the Division must show that the controlling person had actual or constructive knowledge of the core activities that constitute the violation at issue and allowed them to continue." *JCC, Inc. v. CFTC*, 63 F.3d 1557, 1568 (11th Cir. 1995). Wasendorf's lack of good faith is evidenced by his submission and signature on three false CFTC Form 1-FR-FCM reports submitted to the Commission which mistated the amount of funds held in the 1845 customer seg account.

Consequently, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2006): Wasendorf controlled PFG, exhibited a lack of good faith in his conduct, and knowingly induced Wasendorf's violations, thus making him liable for all PFG's violations of the Act.

## VI.    RELIEF SOUGHT

Whenever it appears that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act or any regulation promulgated thereunder, §6c(a) of the Act, 7 U.S.C. §13a-l(a), empowers a district court to issue a restraining order

9

freezing a defendant's assets, prohibiting the destruction of a defendant's books and records and allowing CFTC agents access to a defendant's books and records. Here, PFG and Wasendorf have failed to maintain customer funds in segregated accounts and misappropriated the monies for purposes other than what customers intended. PFG and Wasendorf have attempted to cover up this conduct by filing false CFTC Form 1-FR-FCMs with the Commission. Therefore, PFG and Wasendorf have engaged in acts which constitute violations of the Act and Commission Regulations.

An immediate statutory restraining order is required to: (1) locate, identify, and freeze assets of PFG and Wasendorf to prevent dissipation of such assets; (2) preserve Wasendorf's and PFG's books and records and prevent destruction of such documents; and (3) allow CFTC agents to access Wasendorf's and PFG's books and records. Additionally, the CFTC also seeks a preliminary injunction.

**This Court Should Enter a Statutory Restraining Order with Notice**

A statutory restraining order is particularly important where, here, lack of immediate injunctive relief could result in the destruction of evidence and the dissipation of customer funds. The plain language of § 6c(a) of the Act authorizes a district court to issue the requested relief. *See,* 7 U.S.C. § 13a-1(a) (2006); *CFTC v. Hunt,* 591 F.2d 1211 (7th Cir. 1979), *cert denied*, 442 U.S. 921, 99 S.Ct. 2848 (1979) (stating that a district court has wide authority to issue appropriate relief under the Act). Under Section 6c of the Act, this Court is empowered to issue a restraining order whenever it appears that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of the Act. *See, e.g., CFTC v. Clothier*, 788 F. Supp. 490, 492 (D. Kan. 1992). As the facts detailed above show, over $200 million in

customer funds are presently unaccounted for. PFG and Wasendorf have filed false forms with the CFTC to cover up the customer funds which are missing from the 1845 account.

An asset freeze is also appropriate where, as in this case, the CFTC seeks to preserve funds for disgorgement and restitution. *FTC v. Southwest Sunsites, Inc.,* 665 F. 2d 711, 719 (5th Cir. 1982) (the District Court has inherent equitable power to prevent dissipation of assets or funds); s*ee, also, CFTC v. Trending Cycles for Commodities, Inc.*, [1980-1982 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 21,013 at 23,970 (CFTC Mar. 17, 1980). In holding that Federal Rule of Civil Procedure 65(b)'s 20 day limit for restraining orders applies to an asset freeze under Section § 6c, the Seventh Circuit stated that a temporary asset freeze is appropriate where "the evidence suggests that customers' financial interests would otherwise be in jeopardy." *CFTC v. Lake Shore Asset Management*, 496 F.3d 769, 772 (7th Cir. 2007); *see also CFTC v. Lake Shore Asset Management*, 511 F.3d 762, 763-64 (7th Cir. 2007). As set forth in the accompanying proposed order**,** the CFTC seeks an asset freeze for all assets owned, managed or controlled by PFG or Wasendorf. Based upon their ongoing fraudulent conduct, it is appropriate for the Court to freeze all of the PFG and Wasendorf's assets, in order to ensure that customers' funds are accounted for, and that such funds are not further dissipated following the filing of the instant action.

In the present case, as discussed above and as demonstrated in the declaration and exhibits in the accompanying Appendix, the CFTC has demonstrated that PFG and Wasendorf have violated, and may continue to violate Sections 4b(a)(1)(A),(C), 4d(a), and 6(c)(2) of the Act and Regulation 1.20(a). Thus, issuance of an immediate statutory restraining order is necessary to prevent further injury to the customers.

## VII. CONCLUSION

For the foregoing reasons and the reasons set forth in its Motion for Statutory Restraining Order, the CFTC respectfully requests that the Court issue the CFTC's proposed Statutory Restraining Order with notice to freeze PFG and Wasendorf's assets and prevent them from directly or indirectly destroying, mutilating, concealing, altering, or disposing of any of their books, records, documents and correspondence.

Date: July 10, 2012                                   Respectfully submitted,


                                                      /s/ William P. Janulis
                                                      
                                                      Chief Trial Attorney
                                                      Illinois A.R.D.C. No. 1326449
                                                      Commodity Futures Trading Commission
                                                      525 West Monroe Street, Suite 1100
                                                      Chicago, Illinois 60661
                                                      (312) 596-0545
                                                      wjanulis@cftc.gov

                                                      Jon. J. Kramer
                                                      Senior Trial Attorney
                                                      Illinois A.R.D.C. No. 6272560
                                                      Commodity Futures Trading Commission
                                                      525 West Monroe Street, Suite 1100
                                                      Chicago, Illinois 60661
                                                      (312) 596-0596
                                                      jkramer@cftc.gov

                                                      Rosemary Hollinger
                                                      Regional Counsel
                                                      Illinois A.R.D.C. No. 3123647
                                                      Commodity Futures Trading Commission
                                                      525 West Monroe Street, Suite 1100
                                                      Chicago, Illinois 60661
                                                      (312) 596-0538
                                                      rhollinger@cftc.gov