IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission, ) | |
| ) | No. 12-CV-5383 |
| Plaintiff, ) | |
| ) | |
| v. ) | Honorable Rebecca R. Pallmeyer |
| ) | |
| Peregrine Financial Group, Inc. and ) | |
| Russell R. Wasendorf, Sr., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Russell R. Wasendorf, Sr., the founder and chief executive officer of Peregrine Financial Group, Inc. ("Peregrine"), an Iowa-based commodities firm, is serving a 50-year prison term for embezzling hundreds of millions of dollars from the firm's customers. *See United States v. Wasendorf*, No. 12 CR 2021 (N.D. Iowa Jan. 31, 2013). On July 9, 2012, the U.S. Commodity Futures Trading Commission ("CFTC") brought this action against Wasendorf and his firm (collectively "Defendants"), alleging that Defendants violated the Commodity Exchange Act, 7 U.S.C. § 1, *et seq.*, and CFTC Regulations, 17 C.F.R. § 1.1, *et seq.*, by failing to maintain adequate customer funds in segregated accounts. The following day, this court entered an order appointing Michael M. Eidelman ("Receiver") temporary receiver over Wasendorf and any entity he owned or controlled. The court's July 10, 2012 order directed the Receiver to marshal, preserve, and liquidate Defendants' assets, and stayed any efforts by creditors to establish or enforce any claim against them. One week later, after Peregrine had filed a voluntary Chapter 7 bankruptcy petition, the court's order was amended to reflect that the Receiver's authority is limited to Wasendorf and his assets.

More than one year later, on September 3, 2013, Woodland Construction Company ("Woodland"), one of Wasendorf's creditors, moved for an award of payment in full on two

mechanic's liens for work Woodland performed on Wasendorf's properties. The Receiver objected, asserting that Woodland's liens were not perfected or secured before entry of this court's July 10 order staying any enforcement action. For the reasons stated below, Woodland's motion [283] is denied.

## FACTUAL BACKGROUND

Woodland, a construction company in Cedar Falls, Iowa, performed construction work on two of Wasendorf's properties in Iowa in June and July 2012. (Receiver's Objection to Woodland's Mot. [287], hereinafter "Receiver's Objection," ¶ 1; Woodland's Resp. to Receiver's Objection [290], hereinafter "Woodland's Resp.," ¶¶ 3, 20-21.) The work commenced on June 10 and was completed on July 7, 2012. (Woodland's Resp. ¶ 3.) On July 10, this court entered an Initial Receiver Order [11], appointing the Receiver and staying all persons from establishing or enforcing any claim against Defendants. The court amended that order a week later [28], on July 17, adding detailed stay provisions barring any action in furtherance of claims against Defendants. On July 18, 2012, Receiver's attorney, Randall Lending, traveled to Cedar Falls to inspect Wasendorf's property and met with Woodland's director and sole shareholder, Lance Duncan, who gave Lending access to certain of those properties.[1] (Receiver's Reply [296] ¶¶ 3, 8; Lending Decl., Ex. 1 to Receiver's Reply, ¶¶ 3, 4.) On July 25, 2012, one week after that meeting and fifteen days after this court's July 10, 2012 order, Woodland recorded two mechanics' liens in Iowa's Blackhawk County, one for work on Mr. Wasendorf's home ($19,973.34) and a second for work on one of his business properties ($109,285.77), for a total amount of $129,259.11. (Receiver's Objection [287] ¶ 3.) On September 4, 2012, Receiver's counsel served Woodland with the court's July 17, 2012 amended order. The Receiver argues

---

[1] Although Duncan has a "memory" of this meeting occurring in early August (Duncan Aff., Ex. 1 to Woodland's Resp., at 8), Lending's affidavit and detailed contemporaneous time records substantiate the July 18, 2012 date. (Lending Decl. ¶¶ 3, 4.)

that Woodland already knew about the receivership and this court's order as a result of the July 18 meeting between Duncan and Lending, but Woodland argues it did not have notice of the order until service was rendered in September 2012. (Woodland's Resp. ¶ 22.) Woodland filed proofs of claim against the receivership estate on October 31, 2012. (Exs. A & B to Woodland's Mot.) Finally, on September 3, 2013, Woodland filed this motion for allowance and payment of secured lien claims. On an unidentified date prior to Woodland's filing of this motion, the Receiver offered to settle the liens for "approximately 50%" of Woodland's claims, but Woodland rejected that offer.[2] (Receiver's Reply ¶ 14.)

## **DISCUSSION**

It is undisputed that Woodland is a creditor of the receivership estate, entitled to seek payment along with other creditors as part of the Receiver's distribution. The parties also agree that Woodland's mechanic's liens attached prior to the court's stay order. The dispute here boils down to whether Woodland perfected or otherwise secured its claims. For its part, Woodland contends that, because it recorded its liens on July 25, 2012, its claims are fully secured and, therefore, Woodland is entitled to payment in full for the construction work it performed. (Woodland's Resp. ¶¶ 20-21.) The Receiver argues, to the contrary, that because Woodland only perfected its liens after the stay order went into effect—and in violation of it—that perfection is null and void, and Woodland's claims are unsecured. (Receiver's Objection ¶¶ 20-21.)

Mechanic's liens are available in Iowa for contractors who furnish material or labor to improve any building or land. IOWA CODE § 572.2(1). Such a contractor "shall have a lien upon such building or improvement . . . to secure payment for the material or labor furnished[.]" *Id.*

---

[2] Woodland complains that the Receiver "has not offered any reason why [another creditor's] lien claim, filed on July 30, 2012 is allowed, but Woodland's lien claims filed on July 25, 2012 are not allowed." (Woodland's Objection ¶ 17.) The Receiver explains, however, that he agreed to pay Woodland on the same terms as the other creditor, but was rebuffed. (Receiver's Reply ¶ 13.)

Generally, under Iowa law, a mechanic's lien arises on the day work begins. *Metropolitan Fed. Bank v. A.J. Allen Mech. Contractors, Inc.*, 477 N.W.2d 668, 671 (Iowa 1991). Under IOWA CODE § 572.9, mechanic's liens may be perfected by filing certain documentation with the district court clerk[3] within two years and 90 days of the last day that the lien claimant provided either materials or labor. Such a lien filed within 90 days after the last provision of materials or labor is superior to all other liens that may attach to the property, except those liens of record filed prior to the time the contractor or subcontractor commenced its work. IOWA CODE § 572.18(1).

It is uncontroverted here that Woodland's liens arose on June 10, 2012, the day that it began work on the two properties. The parties similarly agree that Woodland last provided materials and labor to the properties on July 7, 2012 and recorded its liens on July 25, 2012, well within the 90-day period laid out in IOWA CODE § 572.18(1). The only question that remains is whether, by recording its liens after this court's stay order went into effect, Woodland is entitled to payment of those liens as secured claims.

To support its position that its claims are secured, Woodland offers two arguments: (1) its efforts to perfect are explicitly allowed under the stay order, which allows actions "filed to toll any applicable statute of limitations" (Order Appointing a Temporary Receiver at 7); and (2) even if the stay would prohibit the recording of Woodland's liens on July 25, 2012, the stay did not apply in this instance because it was not served on Woodland until September 2012. Neither of these arguments has merit, however. First, although the stay does carve out an exception for actions intended to toll statutes of limitations, Woodland's efforts to perfect its liens is not such an action. Iowa law does require mechanic's liens to be perfected within two years

---

[3] Effective July 1, 2013, in order to perfect a mechanic's lien in Iowa, the filing party must register the lien via an online registry. *See* IOWA CODE § 572.8.

and 90 days, IOWA CODE § 572.9, but perfecting a lien is not an action "filed to toll any applicable statute of limitations": it is an enforcement of Woodland's claims. As such, this is precisely the type of activity that the stay—which prohibits creditors from "taking any action to establish or enforce a claim" (Amended Order Appointing a Temporary Receiver § IV)—was intended to prevent.

Second, as the Receiver points out, unlike Sections II and III of the court's order, Section IV (which includes the stay) does not contain a notice requirement. (Receiver's Reply ¶ 16.) This is not surprising: a notice requirement like the one for which Woodland argues would render the stay toothless, as the Receiver is unlikely to know the identity of every unsecured creditor asserting a claim against the estate. In any event, the court notes its doubt that Woodland was genuinely unaware of the receivership prior to receiving service of the order on September 4, 2012. Duncan (Woodland's director and lone shareholder) spoke at length with the Receiver's counsel on July 18, a week before Woodland recorded its liens (*Id.* ¶¶ 3, 5-11); the notion that Mr. Lending made no mention of the receivership or the stay at that meeting is implausible.

For his part, the Receiver contends that all of Defendants' creditors' rights were fixed as of the commencement of the receivership on July 10, 2012, and, he argues, Woodland cannot avoid that fact by later recording its liens in violation of the court's stay.[4] (Receiver's Objection ¶¶ 23-24.) To support this assertion, the Receiver points to *Modart v. Penrose Indus.*, 293 F. Supp. 1116, 1119 (E.D. Pa. 1967) ("the rights of creditors to the property in possession of the receiver are fixed as of the moment of his appointment") (citing cases and treatises). Woodland urges that *Modart* is distinguishable, as it involved a judgment creditor seeking to execute on

---

[4] The Receiver also argues that, as a violation of the stay, the recording of Woodland's liens is "null and void." (Receiver's Objection ¶ 22.) Given the court's ruling here (explained below), however, the court need not reach this question.

that judgment.[5] *Modart*, 293 F. Supp. at 1119. But at least one federal court has reached the same conclusion in a case that, like this one, involved a construction lien that arose prior to a receivership, and a subsequent effort to perfect it.

In *DBSI, Inc. v. Silver State Bank*, No. CV 09-1205-PHX-JAT, 2009 WL 3260918 (D. Ariz. Oct. 9, 2009), plaintiff DBSI, Inc. had agreed, in June 2008, to provide labor and material to convert an existing structure into a new branch for defendant Silver State Bank. *Id.* at *1. DBSI began work the next month. *Id.* Then, on September 5, 2008, the Commissioner of the Financial Institutions Division of Nevada's Department of Business and Industry appointed the FDIC as the receiver/liquidator of Silver State Bank, and DBSI ceased performing work on the project. On October 5, 2008, DBSI recorded lien notices relating to the work it performed for Silver State Bank; DBSI submitted a proof of claim in the amount of $277,986.09 to FDIC as receiver on October 14, 2008. *Id.* DBSI later filed suit, seeking payment in cash in the full amount of its claim.

The FDIC argued that, because DBSI had not perfected or otherwise secured its lien prior to the initiation of the receivership, DBSI's claim was limited to the amount available through the receivership distribution. DBSI insisted that its legally enforceable rights actually arose prior to the date of the receivership; pointing to the timely recording of its liens, DBSI argued that perfection related back to July 2008, when labor and materials were first furnished. *Id.* at *2. As in Iowa, a mechanic's lien is created under Arizona law whenever a person labors or furnishes materials for the construction or improvement of a building or structure. ARIZ. REV. STAT. 33-981(A); *Metropolitan Fed. Bank of Iowa*, 477 N.W.2d at 671. In both states, perfection of a

---

[5] The court notes that the idea that creditors' rights are fixed at the commencement of receivership is, nonetheless, an old one. *See e.g., Wilcoxen v. Munn*, 206 Iowa 1194, 1197, 221 N.W. 823, 825 (1928) ("When the receiver took possession of the property, the rights of the creditors therein became fixed.").

6

mechanic's lien is not automatic. In Arizona, the holder of a mechanic's lien can perfect that lien by recording a notice and claim with the county recorder within 120 days after completion of the construction work. ARIZ. REV. STAT. § 33-933(A).) Similarly, a party seeking to perfect a mechanic's lien in Iowa has two years and 90 days to file a verified statement of demand with the district court clerk in the county where the property is situated. IOWA CODE § 572.9. The *DBSI* court concluded that, at the date of the insolvency, DBSI held a valid mechanic's lien, but, because DBSI had not perfected it, the lean was unsecured. 2009 WL 3260918, at *3. Thus, DBSI was not exempted from the distribution priority mandated by Congress for FDIC receiverships. In reaching its conclusion, the court pointed out that DBSI's argument read the requirement of perfecting a lien out of the statute: DBSI appeared to believe that it "could have enforced its mechanic's lien without even filing the notice required by" Arizona law. *Id.* at *4.

This case is analogous in both fact and applicable state law. Both Woodland and DBSI had valid mechanic's liens prior to the appointment of receivers and the entry of stay orders. In both cases, after the receiver's appointment, the creditor attempted to secure and perfect its mechanic's lien in apparent violation of a court order staying efforts to enforce or secure any lien. Like Woodland here, (Woodland's Resp. ¶ 3), DBSI argued that perfection of its mechanic's liens, after the institution of the receivership, related back to the commencement of work before the receivership was instituted. *DBSI Inc.*, 2009 WL 3260918, at *11. This court reaches the same conclusion as the *DBSI* court: it would be inappropriate to treat as secured liens that were not perfected or otherwise secured at the commencement of the receivership, particularly where, as here, the perfection of the liens was in violation of this court's order. Accordingly, Woodland's liens are properly classified as unsecured and should be paid as such by the Receiver.

## **CONCLUSION**

For the foregoing reasons, Woodland's motion for allowance and payment of secured lien claims [283] is denied.

ENTER:

Dated: May 2, 2014

_____
REBECCA R. PALLMEYER
United States District Judge